BUCHALTER LLP
BRIAN T. HARVEY (SBN: 238991)
REBECCA M. WICKS (SBN: 313608)
1000 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90017-2457
Telephone: 213.891.0700
Fax: 213.896.0400
Email: bharvey@buchalter.com
rwicks@buchalter.com

Attorneys for Kapitus Servicing, Inc., as Servicing Agent for Kapitus, LLC

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re<br><br>MARKSIANE SENELATH AND LINDA GIP,<br><br>Debtors. | Case No. 8:25-bk-10995-SC<br><br>Chapter 7 |
| KAPITUS SERVICING, INC., as Servicing Agent for Kapitus, LLC<br><br>Plaintiff,<br><br>v.<br><br>MARKSIANE SENELATH,<br><br>Defendant. | Adv. No. 8:25-01303-SC<br><br>**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS CAUSES OF ACTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**<br><br>Hearing:<br>Date: March 3, 2026<br>Time: 1:30 p.m.<br>Courtroom: 5C<br>Location: 411 West Fourth Street<br>Santa Ana, CA 92701 |

Kapitus Servicing, Inc., as Servicing Agent for Kapitus, LLC ("Plaintiff"), by and through its undersigned counsel, responds to the *Motion to Dismiss Causes of Action Pursuant to Federal Rule of Civil Procedure 12(b)(6)* [Dkt. No. 5] (the "Motion") filed by Defendant Marksiane Senelath ("Defendant") and in opposition thereto states:

///

# TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ..... 6

II. FACTUAL BACKGROUND ..... 6

III. LAW AND ARGUMENT ..... 11

A. The Legal Standard for a Motion to Dismiss Is Deferential to the Plaintiff and Complaint ..... 11

B. Plaintiff Has Alleged Sufficient Facts to Support a Claim of Embezzlement Under 11 U.S.C. § 523(a)(4). ..... 13

C. Plaintiff Has Sufficiently Pleaded a Claim for Conversion, Supporting a Claim Under Section 523(a)(6). ..... 15

D. If the Court Is Inclined to Grant the Motion, Kapitus Requests Leave to Amend ..... 18

IV. CONCLUSION ..... 18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Afonica*, 174 B.R. 242 (Bankr. N.D. Ohio 1994) .......... 16

*Aliera LT, LLC, et al. v. Health Reform Team, Inc.*, 665 B.R. 468 (Bankr. N.D. Ga. 2024) .......... 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 12

*In re Baker*, 66 B.R. 652 (Bankr. Nev. 1986) .......... 16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 12

*Bonanno v. Thomas*, 309 F.2d 320 (9th Cir. 1962) .......... 18

*In re Bridges*, No. 19-44181-ELM, 2025 WL 2968058 (Bankr. N.D. Tex. Oct. 17, 2025) .......... 15

*Carillo v. Su*, 290 F.3d 1140 (9th Cir. 2002) .......... 17

*In re Cohen*, 334 B.R. 392 (Bankr. N.D. Ill. 2005), *aff'd sub nom. Fischer Inv. Cap., Inc. v. Cohen*, No. 06 C 3190, 2006 WL 4991323 (N.D. Ill. Aug. 7, 2006), *aff'd sub nom. In re Cohen*, 507 F.3d 610 (7th Cir. 2007) .......... 15

*Conley v. Gibson*, 355 U.S. 41 (1957) .......... 12

*In re Daddosio*, No. AP 20 A 00418, 2023 WL 5355265 (Bankr. N.D. Ill. Aug. 21, 2023) .......... 15, 17

*In re Disbrow*, 2019 WL 4439897 (Bankr. S.D. Fl. 2019) .......... 13

*Doe v. U.S.*, 58 F.3d 494 (9th Cir. 1995) .......... 18

*In re Donnan*, 2013 WL 3992411 (Bankr. M.D. Ga. 2013) .......... 13

*Gilligan v. Jamco Development Corp.*,
108 F.3d 246 (9th Cir. 1997)........................................ 11

*In re Jacks*,
266 B.R. 728 (B.A.P. 9th Cir. 2001)........................................ 16

*In re Jercich*,
238 F.3d 1202 (9th Cir. 2001)........................................ 15, 16, 17

*Jett v. Sicroff*,
401 F.3d 1101 (9th Cir. 2005)........................................ 17

*Kapitus Servicing, Inc. v. Broitzman*,
Case No. 2:23-ap-00033-FMD, Docket No. 63 (Bankr. M.D. Fla. Aug. 23, 2025) ........................................ 15, 16

*In re Littleton*,
942 F.2d 551 (9th Cir. 1991)........................................ 13

*Lormand v. US Unwired, Inc.*,
565 F.3d 228 (5th Cir. 2009)........................................ 12

*Moore v. United States*,
160 U.S. 268 (1895) ........................................ 13

*Murray v. Bammer*,
131 F.3d 788 (9th Cir. 1997)........................................ 17

*In re Ormsby*,
591 F.3d 1199 (9th Cir. 2010)........................................ 15, 17

*OSU Student Alliance v. Ray*,
699 F.3d 1053 (9th Cir. 2012)........................................ 12

*In re Quinones*,
537 B.R. 942 (Bankr. N.D. Cal. 2015)........................................ 13

*In re Rodriguez*,
568 B.R. 328 (Bankr. S.D. Cal. 2017), *aff'd*, No. AP 15-90095-CL, 2021 WL 345571 (B.A.P. 9th Cir. Feb. 1, 2021), *aff'd*, No. 21-60018, 2022 WL 17729254 (9th Cir. Dec. 16, 2022) ........................................ 17

*In re Smith*,
No. 20-14400-AMC, 2024 WL 4037496 (Bankr. E.D. Pa. Sept. 3, 2024)........................ 16, 17

*U.S. v. Recker*,
180 B.R. 543-44 (Bankr. E.D. Mo. 1995)........................................ 16

*Warth v. Seldin*,
422 U.S. 490 (1975) ........................................ 12

*Wilson Family Foods, Inc., et al. v. Brown*, 457 B.R. 919 (Bankr. M.D. Ga. 2011) ..... 13

*In re Wolf*, 577 B.R. 327 (Bankr. C.D. Cal. 2017) ..... 13

**Statutes**

11 U.S.C. § 523(a)(4) ..... 6, 13, 14, 15

11 U.S.C. § 523(a)(6) ..... 6, 13, 15, 16, 17

11 U.S.C. § 7012 ..... 11

Cal. Civ. Rule § 8(a) ..... 12

Fed. R. Civ. P. 12(b)(6) ..... 11

Fed. R. Civ. P. 15(A)(2) ..... 18

**Other Authorities**

10 COLLIER ON BANKRUPTCY, ¶ 7008.02[2] (16th ed. rev. 2015) ..... 12

## I.

## PRELIMINARY STATEMENT

1. Defendant seeks dismissal of two of the four causes of action alleged in the Complaint: (1) count 3 under 11 U.S.C. § 523(a)(4) for "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny"; and (2) count 4 under 11 U.S.C. § 523(a)(6) for "willful and malicious injury." Both of Defendant's arguments for dismissal miss the mark. As for count 3, Defendant only addresses the "fiduciary duty" prong, without any consideration to "embezzlement," for which the Complaint alleges supporting facts. Regarding the argument for dismissal of count 4, Defendant imposes an improper "malice" standard and never addresses Plaintiff's claims of conversion. Put simply, each of Defendant's arguments in his Motion misses its mark. As such, the Motion should be denied.

## II.

## FACTUAL BACKGROUND

2. Pursuant to the Complaint, on or about June 15, 2022, Defendant submitted an Application for Funding (the "Application") seeking funding from Plaintiff in which Defendant represented the following:

a. Defendant owned 100% of Sky Limit Venture Corp doing business as Sun X Solar ("Sky Limit");
b. The proposed use of proceeds was for "Professional Services;"
c. Sky Limit's annual business revenue was $1,800,000;
d. Sky Limit's average daily bank balance was $25,000;
e. Defendant's home address was 606 Hermosa Vista Street, Monterey Park, California; and
f. Sky Limit was incorporated in California.

Compl. ¶ 8.

3. On or about June 22, 2022, Defendant caused Sky Limit to enter into with Plaintiff a written Forward Purchase Agreement (Fixed ACH Delivery) (the "Purchase Agreement") for value received. Pursuant to the Purchase Agreement, Plaintiff paid $150,000.00 (the "Purchase

Price") to Sky Limit in exchange for Plaintiff's ownership of all of Sky Limit's future receipts, accounts, contract rights and other obligations arising from or relating to the payment of monies from Sky Limit's customers and/or third party payors (collectively, the "Receipts" defined as all payments made by cash, check, electronic transfer, credit cards, debit cards, mobile payments, or other form of monetary payment in the ordinary course of Sky Limit's business) in the amount of $201,000.00 (the "Receipts Purchased Amount"). Virginia law governs the Purchase Agreement. *Id.* ¶ 9.

4. To secure Sky Limit's performance of its obligations to Plaintiff under the Purchase Agreement, Defendant caused Sky Limit to grant to Plaintiff a security interest in certain personal property (the "Security Agreement"), including all of its accounts, accounts receivable, contracts, chattel paper, instruments, equipment, general intangibles, and inventory, then or thereafter owned or acquired by Sky Limit, and all proceeds thereof (the "Collateral"). *Id.* ¶ 10.

5. As part of the Purchase Agreement, Defendant executed and delivered to Plaintiff a written performance guaranty for value received (the "Guaranty"). Pursuant to the terms of the guaranty, Defendant personally guaranteed to Plaintiff, among other things, Sky Limit's performance of all of the representations, warranties and covenants made by Sky Limit in the Purchase Agreement executed by Defendant. *Id.* ¶ 11.

6. In conjunction with the funding, Defendant executed and submitted a Representations and Acknowledgements Form (the "Representations Form") to Plaintiff, which included, among other, the following representations:

> (4) **My business does NOT have a current** financing product that obligates my business to make payments on a less than monthly basis that has not been disclosed to Kapitus in writing in connection with my application for funding, nor have I taken on such an obligation since I submitted my application for funding to Kapitus nor do I intend to do so, without Kapitus written consent if my business obtains financing from Kapitus.
>
> (11) **All information that I provided to Kapitus to obtain financing for my business accurately reflects the current ownership of the business, business status and/or financial condition of my business**.

*Id.* ¶¶ 12–13.

7. In addition to making the representations contained in the Representations Form, by entering into the Purchase Agreement, Defendant represented, warranted, and covenanted, among other things, the following:

> **II. REPRESENTATIONS, WARRANTIES AND COVENANTS.** Seller and Guarantor represents, warrants and covenants that as of this date and during the term of this Agreement:
>
> **2.6. Deposit Arrangements and Delivery of Receipts.** Without Purchaser's prior written consent, Seller will not (i) change the account designated for delivery of Receipts; (ii) set up multiple accounts into which any of the Seller's receipts are deposited or otherwise transferred; (iii) block or stop payment on Purchaser debit; (iv) permit any event to occur that could cause the diversion of any of Seller's receipts; (v) or take any other action that could have any adverse effect upon Seller's obligations under the Transaction Documents. Seller will batch out receipts with all payment processors on a daily basis.
>
> **2.10. Additional Financing. Seller shall not enter into any arrangement, agreement or commitment for any additional financing, whether in the form of a purchase and sale of receivables, the sale of accounts receivable, or a loan (whether secured or unsecured) with any party other than Purchaser without Purchaser's written consent**.
>
> **2.11. Unencumbered Receipts.** Seller has good, complete and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of Purchaser.
>
> **2.13. Business Purpose.** Merchant is a valid business in good standing under the laws of the jurisdiction in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.
>
> **2.16. Accuracy of Information.** All information provided by Seller and Guarantor to Purchaser in the Transaction Documents, in any application, in all other Seller forms and in response to any request by Purchaser for information whether oral or in writing, is true, accurate and complete in all respects.

*Id.* ¶ 14.

///

8. By executing the Purchase Agreement, Defendant personally agreed and confirmed that all information provided to Plaintiff was "true, accurate, and complete in all respects," and the Purchase Agreement further emphasized that "**[i]f any information provided is false or misleading, Seller shall be held liable for fraud in the inducement and fraud and Guarantor(s) shall be personally liable for the Seller's obligations**." The Purchase Agreement required signatures in no fewer than 11 places. In each instance where Sky Limit was required to execute the Purchase Agreement, Defendant signed as the "Owner" of Sky Limit. *Id.* ¶ 16.

**Defaults**

9. On or about October 25, 2022, upon information and belief, Defendant caused Sky Limit to issue a stop payment on Plaintiff's attempt to debit from the designated bank account (the "Designated Account") in accordance with the Purchase Agreement. *Id.* ¶ 19.

10. On or about November 7, 2022, a partial payment was made to Plaintiff from the Designated Account. *Id.* ¶ 20.

11. However, on or about December 22, 2022, upon information and belief, Defendant caused Sky Limit to issue another stop payment on Plaintiff's attempt to debit from the Designated Account in accordance with the Purchase Agreement. Accordingly, Sky Limit is in default of the Purchase Agreement. *Id.* ¶ 21.

12. On or about October 23, 2023, Plaintiff filed a complaint for breach of contract and fraud against Sky Limit and Defendant in the Circuit Court for the State of Virginia, City of Richmond, Case No. CL23-4925 (the "State Court Action"). *Id.* ¶ 22.

13. On September 12, 2024, the Plaintiff obtained a judgment against Sky Limit and Defendant in the State Court Action in the principal amount of $164,860.00 plus interest at the contract rate of 10% per annum from the date of December 22, 2022, and attorney's fees of $41,215.00 (the "Judgment"). *Id.* ¶ 23.

14. Upon information and belief, Defendant misrepresented Sky Limit's annual gross revenue in the Application to induce Plaintiff to fund Sky Limit. Defendant's Statement of Financial Affairs states that his gross income from operating a business in 2023 was -$11,839. [Docket No. 1 at 52]. Pursuant to Defendant's 2023 tax returns, Plaintiff is informed and believes

that the Defendant's "gross income" from operating a business is based on a -$75,316 qualified business loss from Sky Limit and $82,612 in qualified business income. Pursuant to the Defendant's 2023 tax returns, the qualified business loss carryforward from 2022 was -$514,312. *Id.* ¶ 26.

15. This misrepresentation constitutes a breach of Representation 11 above regarding the accuracy of financial information provided by Defendant to Plaintiff. *See id*. ¶ 27.

16. Additionally, contrary to Representation 4, Plaintiff is informed and believes that, as of January 2022, Sky Limit was obligated under a financing product with ODK Capital, LLC ("ODK"), which required Sky Limit to make payments on a weekly basis and was not disclosed to Plaintiff. *Id.* ¶¶ 28–29.

17. Specifically, Plaintiff is informed and believes that Sky Limit granted ODK a security interest in (i) any and all amounts owing to Sky Limit now or in the future from any merchant processor(s) processing charges made by customers of Sky Limit via debit or credit card transactions; and (ii) all other tangible and intangible personal property and the proceeds thereof. *Id.* ¶ 30.

18. This also constitutes a violation of paragraph 2.11 of the Purchase Agreement, in which Defendant represented that "[Sky Limit] has good, complete and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever . . . ." *Id.* ¶¶ 31-32.

19. Defendant also violated paragraph 2.10 of the Purchase Agreement. Contrary to this provision, the Plaintiff is informed and believes that the Defendant entered into additional financing agreements, including with Bluevine, Inc. ("Bluevine"), after executing the Purchase Agreement, whereby Defendant sold, transferred, or otherwise pledged security interests in, the Receipts that he had previously sold to Plaintiff. *See id.* ¶¶ 33–35.

20. Pursuant to paragraph 2.6 of the Purchase Agreement, the Defendant agreed that "[w]ithout Purchaser's prior written consent, Seller will not (i) change the account designated for the delivery of Receipts [the "Designated Account"]; (ii) set up multiple accounts into which any of the Seller's receipts are deposited or otherwise transferred; (iii) block or stop payment on

Purchaser debit; (iv) permit any event to occur that could cause diversion of any of Seller's receipts; (v) or take any other action that could have any adverse effect upon Seller's obligations under the Transaction Documents." Contrary to this provision, upon information and belief, after Plaintiff's funds were deposited into Sky Limit's bank account, the Defendant caused Sky Limit to issue a stop payment on Plaintiff's debit in or around October 2022. *Id.* ¶¶ 36–37.

21. Pursuant to the Purchase Agreement, Defendant represented that "[t]he entirety of the Purchase Price will be used in the ordinary course of business" and "[t]he entirety of the Purchase Price will be used exclusively for a Business Purpose and no other." Defendant further acknowledged in the Purchase Agreement that a "Business Purpose does not include: (a) payment for, or purchase of, any items, goods, materials, real property, personal property or services for personal, individual, or household use; or (b) use of funds for any proceeding under the United States Bankruptcy Code or any similar law (whether arising under Federal or State law) and/or any other legal proceeding or alternative dispute resolution proceeding." Contrary to this representation, upon information and belief, Defendant owns and operates Array Energy Corp. ("Array"), which conducts a substantially similar business to Sky Limit, as both companies are solar and energy contracting companies. Upon information and belief, Defendant transferred assets, including Receipts, from Sky Limit to Array. *Id.* ¶¶ 38–39.

22. Further contrary to this representation, upon information and belief, Defendant transferred assets, including Receipts, from Sky Limit to his wife, Linda Gip, in the amount of at least $250,000 from August 2022 through November 2022. *Id.* at 40.

## III.

## LAW AND ARGUMENT

### *A. The Legal Standard for a Motion to Dismiss Is Deferential to the Plaintiff and Complaint*

23. Motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure (applicable by virtue of Bankruptcy Rule 7012) are generally disfavored by the courts. *See Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 248 (9th Cir. 1997) ("A complaint should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of

his claim which would entitle him to relief.'") (quoting *Conley v. Gibson*, 355 U.S. 41, 45 (1957)); *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (motions to dismiss are "viewed with disfavor and rarely granted") (internal citation omitted).

24. A complaint must have sufficient factual allegations "to state a claim to relief that is plausible on its face" and "[a] claim is facially plausible 'when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citations omitted). In deciding a motion to dismiss, a court must accept as true all of the material allegations of the complaint and must view the complaint in the manner most favorable to the complaining party. *Warth v. Seldin*, 422 U.S. 490, 501 (1975). The court also "may consider the exhibits attached to the complaint." *Aliera LT, LLC, et al. v. Health Reform Team, Inc. (In re Aliera Companies, Inc.)*, 665 B.R. 468, 482 (Bankr. N.D. Ga. 2024).

25. Courts generally agree that the plaintiff need not "make its case" against a defendant by pleading specific evidentiary facts supporting each element of a cause of action. *See OSU Student Alliance v. Ray*, 699 F.3d 1053, 1078 (9th Cir. 2012) (finding that "the plaintiff's failure to prove the case on the pleadings does not warrant dismissal"). In fact, the leading bankruptcy treatise cautions that:

> The chief function of the pleadings under the Civil Rules is to give fair notice of the claim in order for the defendant to answer and prepare for trial. Evidence should not ordinarily be pleaded, since it lengthens the pleading, thereby violating the requirement of a short and plain statement. The deposition and other discovery procedure under Civil Rules 26 through 37 and pretrial procedures under Civil Rule 16 provide efficient methods of eliciting the facts and specifying and narrowing the issues.

10 COLLIER ON BANKRUPTCY, ¶ 7008.02[2] (16th ed. rev. 2015).

26. As the Supreme Court wrote in *Twombly*, Civil Rule 8(a) "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" to support the allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Here, when the Court accepts the truth of the facts asserted in the Complaint, it is apparent, as discussed below, that Kapitus has alleged sufficient facts to support

its claim for a determination of non-dischargeability under sections 523(a)(4) and (a)(6). Therefore, the dismissal of any such claim would be inappropriate, and the Motion should be denied.

***B. Plaintiff Has Alleged Sufficient Facts to Support a Claim of Embezzlement Under 11 U.S.C. § 523(a)(4).***

27. A claim is nondischargeable under 11 U.S.C. § 523(a)(4) if that claim arose out of "fraud or defalcation while [the debtor was] acting in a fiduciary capacity, embezzlement, or larceny." Defendant's sole argument in the Motion addresses the "fraud or defalcation while acting in a fiduciary capacity" prong, but completely ignores the "embezzlement" and "larceny" prongs. Critically, "[t]he phrase "while acting in a fiduciary capacity' in § 523(a)(4) does not qualify the terms 'embezzlement' or 'larceny.'" *In re Wolf*, 577 B.R. 327, 344 (Bankr. C.D. Cal. 2017) (citing *In re Littleton*, 942 F.2d 551, 555 (9th Cir. 1991)). As such, the Motion does not address either the "embezzlement" or "larceny" prongs of section 523(a)(4).

28. Plaintiff has pleaded a *prima facie* case for embezzlement under section 523(a)(4) and, as such, the Motion should be denied. "Embezzlement is the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come. It differs from larceny in the fact that the original taking of the property was lawful, or with the consent of the owner, while in larceny the felonious intent must have existed at the time of the taking. As with fraud, federal common law controls the definitions of embezzlement . . . for purposes of nondischargeability." *In re Donnan*, 2013 WL 3992411, at *7 (Bankr. M.D. Ga. 2013) (internal citations omitted) (*quoting Wilson Family Foods, Inc., et al. v. Brown (In re Brown)*, 457 B.R. 919, 926 (Bankr. M.D. Ga. 2011)); *In re Disbrow*, 2019 WL 4439897, * 15 (Bankr. S.D. Fl. 2019); *In re Quinones*, 537 B.R. 942, 949 (Bankr. N.D. Cal. 2015) (quoting *Moore v. United States*, 160 U.S. 268, 269 (1895)). A movant must show three elements to except a claim from discharge for embezzlement: (1) property rightfully in the possession of a nonowner; (2) the nonowner's appropriation of the property to a use other than which it was entrusted; and (3) circumstances indicating fraud. *Id.* (quoting *In re Littleton*, 942 F.2d 551, 555 (9th Cir. 1991)).

29. Plaintiff has alleged sufficient facts to support each of these elements. First, the Complaint sufficiently alleges that upon execution of the Purchase Agreement, Plaintiff was the

owner of "all of Sky Limit's future receipts, accounts, contract rights and other obligations arising from or relating to the payment of money from Sky Limit's customers and/or third party payors . . . in the amount of $201,00.00." Compl. ¶ 9. Defendant was in possession of these Receipts upon payment by customers and third party payors, which Defendant was to keep in the Designated Account for Plaintiff to debit under the terms of the Purchase Agreement. *Id.* ¶¶ 9, 19.

30. Second, the Complaint alleges that Defendant misappropriated the Receipts for a use other than to pay back Plaintiff by, among other things: (1) issuing stop payments to prevent Plaintiff from exercising its contractual rights to debit the Receipts from the Designated Account, Compl. ¶¶ 19–21; (2) transferring assets, including Receipts in an amount of at least $250,000, to Defendant's wife, *id.* ¶ 40; (3) utilizing the Receipts to operate Array, a competing business to Sky Limit, *id.* ¶39; and (4) pledging the Receipts as collateral to Bluevine and ODK, *id*. ¶80. The Complaint appropriately alleges that Defendant misappropriated the Receipts by applying a stop payment on the Designated Account and transferring assets.

31. Third, the Complaint sufficiently alleges "circumstances indicating fraud." For instance, Plaintiff: (1) overstated Sky Limit's annual revenue by more than $1.8 million, *id.* ¶¶ 25–26; (2) misappropriated Receipts to fund a separate, competing business, *id.* ¶ 39; and transferred Receipts for his and his wife's own benefit to the detriment of Plaintiff, *id.* ¶ 40. For purposes of section 523(a)(4), the fraud element has been described as follows:

> In discussing the elements of embezzlement under section 523(a)(4), some courts get hung up on the "fraud" in "fraudulent intent." Perhaps because common law fraud normally requires a misrepresentation or omission, these courts mistakenly suggest that "fraudulent intent" means the embezzlement must have involved a misrepresentation or omission before the resulting debt will be nondischargeable. *See, e.g., Standard Bank & Trust Co. v. Iaquinta (In re Iaquinta)*, 95 B.R. 576, 580 (Bankr. N.D. Ill. 1989) (holding that embezzlement was not shown because debtor used embezzled funds to pay other debts "openly and without concealment"). Although some misrepresentation or omission on the debtor's part will tend to prove intent, *see, e.g., Cavalear Ins. Agency, Inc. v. Rico (In re Rico)*, 133 B.R. 880, 882 (Bankr. N.D. Ohio 1991) (finding intent where debtor altered books and destroyed checks to hide embezzlement), neither is a prerequisite. **<u>All that must be shown is an intent permanently to deprive another of his property.</u>** *See, e.g., KMK Factoring, L.L.C. v. McKnew (In re McKnew)*, 270 B.R. 593, 632–33 (Bankr. E.D. Va. 2001) (finding intent where evidence showed debtor intended permanently to deprive creditor of property

> and noting that evidence of debtor's efforts to conceal his actions merely "buttress[ed]" that conclusion).

*In re Cohen*, 334 B.R. 392, 400 (Bankr. N.D. Ill. 2005), *aff'd sub nom. Fischer Inv. Cap., Inc. v. Cohen*, No. 06 C 3190, 2006 WL 4991323 (N.D. Ill. Aug. 7, 2006), *aff'd sub nom. In re Cohen*, 507 F.3d 610 (7th Cir. 2007) (emphasis added); *see also In re Ormsby*, 591 F.3d 1199, 1206 (9th Cir. 2010) (fraudulent intent under section 523(a)(4) "may be properly inferred from the totality of the circumstances and the conduct of the person accused"). Courts have found fraudulent intent under similar circumstances where a stop payment was issued and receipts were transferred to third parties. *See, e.g., In re Bridges*, No. 19-44181-ELM, 2025 WL 2968058, at *5 (Bankr. N.D. Tex. Oct. 17, 2025) (finding embezzlement after defendant issued stop payment on Plaintiff's attempt to debit account as provided for under contract); *Kapitus Servicing, Inc. v. Broitzman*, Case No. 2:23-ap-00033-FMD, Docket No. 63 (Bankr. M.D. Fla. Aug. 23, 2025) (finding embezzlement where defendant diverted receipts from a designated account and made transfers to other accounts); *In re Daddosio,* No. AP 20 A 00418, 2023 WL 5355265, at *2 (Bankr. N.D. Ill. Aug. 21, 2023) (finding embezzlement under section 523(a)(4) where defendant cut off Plaintiff's access to the deposit account from which it was contracted to debit). Accordingly, the Complaint sufficiently alleges facts in support of the third element of embezzlement.

32. Because the Complaint sufficiently alleges facts supporting all three elements of a claim for embezzlement under section 523(a)(4), thereby establishing a *prima facie* case thereof, Defendant's Motion should be denied.

### *C. Plaintiff Has Sufficiently Pleaded a Claim for Conversion, Supporting a Claim Under Section 523(a)(6).*

33. Section 523(a)(6) excepts from discharge debts resulting from "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Under this provision, "a breach of contract must be accompanied by some form of 'tortious conduct' to gives rise to 'willful and malicious injury.'" *In re Jercich*, 238 F.3d 1202, 1206 (9th Cir. 2001). "[T]he willful injury requirement of § 523(a)(6) is met when it is shown either that the debtor had a subjective motive to inflict the injury or that the debtor believed that

injury was substantially certain to occur as a result of his conduct." *Id.* at 1208. A "malicious" injury involves "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *Id*. at 1209.

34. Defendant argues that the Complaint only alleges an intentional breach of contract. This is incorrect. Defendant entirely ignores the fact that Plaintiff alleges that, among other actions, Defendant "converted the Receipts by selling, transferring, or otherwise pledging the Receipts" in contravention of Plaintiff's ownership rights to the Receipts. Compl. ¶ 89. This is an allegation of conversion sufficient to satisfy the threshold "tortious conduct" prong of a 523(a)(6) claim.

35. "Conversion can constitute a willful and malicious injury to property for the purpose of § 523(a)(6)." *In re Smith*, No. 20-14400-AMC, 2024 WL 4037496, at *7 (Bankr. E.D. Pa. Sept. 3, 2024). Many courts have held that a transfer of collateral in breach of a security agreement is actionable under Section 523(a)(6) when the defendant's conduct is knowing and certain to cause financial harm to the creditor. *Id.*; *Kapitus Servicing, Inc. v. Broitzman*, Case No. 2:23-ap-00033-FMD, Docket No. 63 (Bankr. M.D. Fla. Aug. 23, 2025) (holding a debt is nondischargeable under 523(a)(6) where debtor deposited funds in a separate account to prevent debiting payments); *see also In re Jacks*, 266 B.R. 728, 741 (B.A.P. 9th Cir. 2001); *U.S. v. Recker*, 180 B.R. 543-44 (Bankr. E.D. Mo. 1995); *In re Afonica*, 174 B.R. 242, 247 (Bankr. N.D. Ohio 1994); *In re Baker*, 66 B.R. 652, 655 (Bankr. Nev. 1986) (Citibank's allegations that their injury was caused by defendants' conversion of proceeds from the secured collateral to their own use or improper uses of the corporation pursuant to Section 523(a)(6) were sufficient to withstand defendants' motion to dismiss for failure to state a claim.) The Complaint properly alleges conversion of the Receipts, which is sufficient for the pleading of a claim under § 523(a)(6).

36. Regarding the willfulness element, the Complaint sufficiently alleges that Defendant took multiple actions for which it was "substantially certain" that Plaintiff would be injured. These actions include, among other things, (1) issuing stop payments to prevent Plaintiff from exercising its contractual rights to debit the Receipts from the Designated Account, Compl. ¶¶ 19–21; (2) transferring assets, including Receipts in an amount of at least $250,000, to Defendant's wife, *id.* ¶ 40; (3) utilizing the Receipts to operate Array, a competing business to Sky

Limit, *id.* ¶ 39; and (4) converting the Receipts by selling, transferring, or otherwise pledging them as collateral to Bluevine and ODK, *id*. ¶80. The natural result of these intentional actions is the benefit of Defendant to the detriment of Plaintiff. *See, e.g. In re Rodriguez*, 568 B.R. 328, 345 (Bankr. S.D. Cal. 2017), *aff'd*, No. AP 15-90095-CL, 2021 WL 345571 (B.A.P. 9th Cir. Feb. 1, 2021), *aff'd*, No. 21-60018, 2022 WL 17729254 (9th Cir. Dec. 16, 2022) (recognizing that for a willful claim under 523(a)(6), "as a logical matter, appropriating someone's property necessarily harms them because the loss works a deprivation").

37. Finally, regarding the "malice" element, Defendant improperly elevates the standard. Although Defendant initially cites the standard set forth above regarding "a wrongful act, done intentionally, which necessarily causes injury, and is done without just cause or excuse," Defendant then goes on to argue that Plaintiff must establish "a motive to affirmatively want to cause injury to Plaintiff, such as "hatred, ill will, or spite." Motion at 5. However, malice under section 523(a)(6) "does not require a showing of biblical malice, i.e., personal hatred, spite or ill-will." *Murray v. Bammer (In re Bammer)*, 131 F.3d 788, 791 (9th Cir. 1997) (citation omitted). At a minimum, willful requires "a deliberate act with knowledge that the act is substantially certain to cause injury." *In re Jercich*, 238 F.3d at 1208. A debtor "is charged with the knowledge of the natural consequences of his actions." *Ormsby*, 591 F.3d at 1206. "In addition to what a debtor may admit to knowing, the bankruptcy court may consider circumstantial evidence that tends to establish what the debtor must have actually known when taking the injury-producing action." *Jett v. Sicroff (In re Sicroff)*, 401 F.3d 1101, 1106 (9th Cir. 2005), amended, 2005 WL843584 (9th Cir. Apr. 11, 2005) (quoting *Carillo v. Su (In re Su)*, 290 F.3d 1140, 1146 n.6 (9th Cir. 2002)). Here, sufficient facts are alleged to support a claim that Defendant's actions were "wrongful" and done intentionally and necessarily caused Plaintiff injuries "without just cause or excuse." *See, e.g., In re Smith*, 2024 WL 4037496, at *7 (holding defendant had converted Plaintiff's receipts by removing access to bank account, thereby violating section 523(a)(6)); *In re Daddosio,* 2023 WL 5355265, at *4–*5 (approving Plaintiff's argument alleging conversion against defendant in similar circumstances).

38. As such, Plaintiff has alleged a *prima facie* case under 11 U.S.C. § 523(a)(6). As such, the Motion should be denied.

### *D. If the Court Is Inclined to Grant the Motion, Kapitus Requests Leave to Amend*

39. In the event that the Motion is granted and the dismissal of the Complaint is predicated upon the failure to state a claim upon which relief can be granted, Kapitus is entitled to amend its pleading. *Bonanno v. Thomas*, 309 F.2d 320, 322 (9th Cir. 1962). The general rule is that leave to amend should be freely granted "when justice so requires." Fed. R. Civ. P. 15(A)(2). The Ninth Circuit has repeatedly held that a "district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. U.S.*, 58 F.3d 494, 496-97 (9th Cir. 1995).Thus, if the Court is inclined to grant the Motion, Kapitus submits that leave to amend is warranted.

## IV.

## CONCLUSION

40. Based on the foregoing, Plaintiff respectfully requests that this Court enter an order denying the Motion and granting such further relief as this Court deems just and proper, or alternatively, granting leave to amend the Complaint.

DATED: February 17, 2026 BUCHALTER LLP

By: */s/ Rebecca Wicks*
REBECCA WICKS
Attorneys for Plaintiff
KAPITUS SERVICING, INC., as Servicing Agent for Kapitus, LLC

# PROOF OF SERVICE

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: Buchalter, A Professional Corporation, 1000 Wilshire Boulevard, Suite 1500, Los Angeles, CA 90017-2457

A true and correct copy of the foregoing document entitled (*specify*):**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS CAUSES OF ACTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) February 17, 2026, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Jeffrey I Golden (TR) lwerner@go2.law, kadele@go2.law;C205@ecfcbis.com
- Benjamin Heston bhestonecf@gmail.com, benheston@recap.email,NexusBankruptcy@jubileebk.net
- United States Trustee (SA) ustpregion16.sa.ecf@usdoj.gov
- Rebecca M Wicks rwicks@buchalter.com, lverstegen@buchalter.com;docket@buchalter.com

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) February 17, 2026, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Debtor:
Marksiane Senelath
2621 Silverspur Lane
La Habra, CA 90631

Linda Gip
2621 Silverspur Lane
La Habra, CA 90631

Presiding Judge
United States Bankruptcy Court
Central District of California
Honorable Scott Clarkson
411 W. Fourth St., Suite 5130
Santa Ana, CA 92701

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*), I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 17, 2026 | Debby Bodkin | */s/ Debby Bodkin* |
|---|---|---|
| *Date* | *Type Name* | *Signature* |